## A. S. ARNOLD v. COMMONWEALTH.

**Taxation—Liability of Sureties on Sheriff's Bond.**

In view of the Acts of 1864 and 1867, the sureties on a sheriff's bond can not be held liable for taxes received by the sheriff from a railroad company and paid to the auditor of the state in settlement with such officer, where such transaction was not contemplated upon the execution of the bond, and it is doubtful whether such liability was ever assumed.

APPEAL FROM FRANKLIN CIRCUIT COURT.

January 9, 1874.

OPINION BY JUDGE PRYOR:

By the enactment of 1864, Myer's Supp. p. 480, the mode of list-ing railroad property for taxation was changed. Such roads were assessed by reason of that act, as now, at a valuation of $20,000.00 per mile; and in order to ascertain the amount of tax such road had to pay, its officers were required to report the length of the road to the auditor of public accounts. When this was done, the cor-poration was required to pay the taxes directly to the treasurer. The sheriff, by this act, was no longer the collector of revenue from railroads, and the only means left the state for collecting the taxes in the event the company fails to pay, is by an action for the amount to be made by an ordinary execution. The act of 1867 (March 8) authorizes the back taxes unpaid by any corporation, to be listed and assessed in the county court, and certified to the proper collecting officer, to be by him collected in the same manner as the public revenue is collected.

It may be questionable whether this latter enactment, although general in its character, was intended to apply to railroad compan-ies, as the mode of settlement and collection of the taxes from such corporations had been regulated by the act of 1864, and was cer-tainly not repealed by the act of 1867. If this railroad company had listed with the auditor or reported the length of its road, and then failed to pay the taxes, neither the auditor nor treasurer could have coerced payment except by an ordinary execution. The treas-urer, by the act of 1864, was the only officer authorized to collect, or rather to secure the money, if the company voluntarily paid it. He had no power to certify the non-payment to the sheriff and order him to collect it, as that officer was no longer the collecting officer of revenue from railroad companies. If the collecting officer of such revenue, then the act of 1867 would invest him with the right to receive or enforce the collections of the taxes. The object of the legislature by the act of 1864 was to take from the sheriff the right to collect such taxes and require the payment to be made to the treasurer. There is no express repeal of this act by the act of 1867; and if the latter act is continued, as is maintained it should be, by the attorney for the state, the result is that when the length of the road is reported to the auditor, the sheriff, although the taxes are unpaid, has no power to collect; but when not reported to the auditor, he has such power. He certainly was not the collecting

officer of such revenue when the law of 1867 was enacted; and as the treasurer was the only officer authorized to receive the taxes by the act of 1864, it may, with much plausibility, be insisted that he was the officer to whom the taxes should have been paid, and not to the sheriff. The question, however, is not free from doubt, and as other rights are involved in a proper construction of the statute, it is not deemed necessary to decide it.

The sureties in the present case rely on the questions of final settlement by the sheriff with the auditor of the revenue for the year 1869, as a complete exoneration from all liability, and we see no reason why the defense is not fully sustained. If the sheriff had the power to collect this revenue during the year 1869, as sheriff, and did in fact collect it, whether due from the corporations prior to that time or not, the quietus exhibited evidencing a full settlement with the auditor for that year, is as conclusive on the state as the receipt of the treasurer to the company for the taxes, when the road had been listed with the auditor. The receipt of June 29, 1870, acknowledges the receipt in full of the revenue tax due from Arnold for the year 1869. His sureties, however vigilant in their efforts to be relieved from liability, were rendered powerless to interfere in behalf of themselves or the state, by the exhibition of a receipt showing an entire discharge of their principal from all responsibility. This receipt was doubtless given for the reason that there was no assessment of taxes against this railroad company with the auditor, and tends to strengthen the presumption that this officer, as any faithful or efficient official would have done, looked to the payment of the taxes by the company to the treasurer and not to the sheriff.

It is immaterial, however, whether listed with the auditor or not; the listing of Withers was clearly incompetent, in a proceeding like this, to show that all the revenue due by the sheriff was not included in the settlement of 1869. If there was a mistake in the execution of this receipt, a proper proceeding should have been instituted for the purpose of correcting this mistake by restating the accounts. This court, in the case of *Hobson and Sureties v. Commonwealth*, 1 Duvall 172, has decided the identical question, and said the adjustment by the auditor, when closed and registered, is conclusive; his quietus was conclusive, and neither the state nor the sheriff could go behind or controvert it on a motion for a judgment. Nor should the sureties upon the facts of this case be affected

by a correction of the acounts, if any exist, as between the state and their principal. Their liability should not be enlarged by a liberal construction of conflicting statutes, when it clearly appears that upon the execution of the bond by the principal no such responsibility was contemplated, when it is even doubtful whether any such liability was ever assumed. The court should have instructed the jury upon the facts proven that the sureties were not liable. The judgment of the court below is reversed and cause remanded with directions to award a new trial and for further proceedings consistent with this opinion.

Judge Lindsay not sitting.

*Bullock, for appellant.*

———, *for appellee.*